UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDRIA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | |
| QSI, LLC, and JEROME LOCKHART, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

COMPLAINT

COMES NOW Plaintiff, Alexandria Williams, by and through undersigned counsel, The

Kirby G. Smith Law Firm, LLC, and hereby files this Complaint, and states as follows:

I. JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Counts I and

II of this Complaint, which arise out of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq. ("Title VII").

2.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counts III, IV,

and V of this Complaint, which are state-law claims so related to the Title VII claims that

they form part of the same case or controversy.

3.     This Court has personal jurisdiction over Defendants because all of the employment

practices described herein were committed in the Middle District of Alabama, at the

Alatrade Foods, LLC facility located at 6 Downing Drive, Phenix City, Alabama 36869

(the "Facility").

4.     Plaintiff exhausted all administrative remedies in this matter. Determination and Notice of

Rights, Ex. 1.

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in this judicial district and division.

6.   The Facility is located in Russell County, Alabama, which lies within the Eastern Division of the Middle District of Alabama.

## II. PARTIES

7.   Plaintiff Alexandria Williams is a citizen of the United States and a resident of Muscogee County, Georgia.

8.   Defendant QSI, LLC is a limited liability company registered to conduct business in the State of Alabama.

9.   Defendant QSI, LLC may be served by delivering a copy of the Complaint and Summons to its registered agent, National Registered Agents, Inc., located at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

10.   Defendant QSI, LLC was Plaintiff's employer within the meaning of Title VII at all times relevant to this Complaint.

11.   Defendant QSI, LLC employs more than fifteen (15) employees and is subject to the requirements of Title VII.

12.   Defendant Jerome Lockhart is a resident of the State of Alabama.

13.   At all times relevant to this Complaint, Defendant Jerome Lockhart was employed by QSI, LLC.

14.   At all times relevant to this Complaint, Defendant Jerome Lockhart served as Plaintiff's direct supervisor and as the site manager of the Facility.

15. Defendant Jerome Lockhart may be served at his residence or place of employment, including at the Facility located at 6 Downing Drive, Phenix City, Alabama 36869.

### III. FACTUAL ALLEGATIONS

16. Plaintiff is female.

17. Plaintiff began her employment with QSI, LLC on June 1, 2022.

18. Plaintiff initially worked at QSI's Pine Mountain Valley, Georgia location.

19. On February 11, 2024, Plaintiff transferred from the Pine Mountain Valley, Georgia location to QSI's operation at the Alatrade Foods, LLC facility located at 6 Downing Drive, Phenix City, Alabama 36869 (the "Facility").

20. Upon her transfer to the Facility, Plaintiff worked as an SSOP Clerk.

21. Plaintiff worked the overnight shift at the Facility, from approximately 1:00 a.m. to 6:00 a.m.

22. Plaintiff's direct supervisor at the Facility was Defendant Jerome Lockhart.

23. Defendant Lockhart served as the site manager of the Facility.

24. Defendant Lockhart has been employed by QSI, LLC since 2017.

25. Plaintiff and Defendant Lockhart typically worked alone together in the office during Plaintiff's overnight shift.

26. Other QSI employees were generally not present in the office with Plaintiff and Defendant Lockhart during the overnight shift.

27. Defendant Lockhart is a registered sex offender.

28. Defendant Lockhart's status as a registered sex offender pre-dated his employment with Defendant QSI, LLC.

29. Defendant Lockhart's status as a registered sex offender pre-dated his promotion to a

supervisory role over Plaintiff.

30. Upon Plaintiff's transfer to the Facility, Plaintiff was advised by several QSI employees that Defendant Lockhart was a registered sex offender.

31. Defendant Lockhart's status as a registered sex offender was known among QSI employees at the Facility.

32. Defendant QSI, LLC knew, or in the exercise of reasonable care should have known, of Defendant Lockhart's status as a registered sex offender.

33. Defendant QSI, LLC permitted Defendant Lockhart to work alone with Plaintiff during the overnight shift in the office at the Facility.

34. In mid-April 2024, while Plaintiff and Defendant Lockhart were alone together in the office at the Facility, Defendant Lockhart placed his hands on Plaintiff's shoulders without her permission.

35. In response, Plaintiff verbally told Defendant Lockhart not to touch her again.

36. In late April 2024, Plaintiff was involved in two car accidents wherein she sustained a knee injury.

37. On or about May 6, 2024, Plaintiff took an absence from work related to the injuries she sustained in the car accidents.

38. Plaintiff's absence on May 6, 2024 was approved by Defendant Lockhart.

39. On May 8, 2024, Plaintiff and Defendant Lockhart were alone together in the office at the Facility.

40. On May 8, 2024, Plaintiff informed Defendant Lockhart of the knee injury that she sustained as a result of the car accidents.

41. After Plaintiff informed Defendant Lockhart of her knee injury, Defendant Lockhart began

to touch Plaintiff's leg without her permission.

42. Defendant Lockhart's touching of Plaintiff's leg on May 8, 2024 was intentional.

43. Defendant Lockhart's touching of Plaintiff's leg on May 8, 2024 was conducted in a harmful or offensive manner.

44. Defendant Lockhart's touching of Plaintiff's leg on May 8, 2024 was conducted with sexual overtones.

45. While touching Plaintiff's leg, Defendant Lockhart asked Plaintiff if she wanted a massage.

46. Plaintiff immediately told Defendant Lockhart not to touch her.

47. Plaintiff backed away from Defendant Lockhart toward a filing cabinet in the office.

48. Defendant Lockhart ignored Plaintiff's instruction not to touch her.

49. Defendant Lockhart followed Plaintiff to the filing cabinet.

50. Defendant Lockhart pressed his body against Plaintiff's body from behind.

51. Defendant Lockhart pressed his body against Plaintiff's body without her permission.

52. Defendant Lockhart pressed his body against Plaintiff's body in a sexual and aggressive manner.

53. As Plaintiff attempted to pull away, Defendant Lockhart placed his arm around Plaintiff.

54. Defendant Lockhart placed his arm around Plaintiff without her permission.

55. Plaintiff was forced to flee the office in order to escape Defendant Lockhart's physical contact.

56. Each of the touchings of Plaintiff by Defendant Lockhart on May 8, 2024 were intentional.

57. Each of the touchings of Plaintiff by Defendant Lockhart on May 8, 2024 were conducted with sexual overtones.

58. Each of the touchings of Plaintiff by Defendant Lockhart on May 8, 2024 were unwelcome.

59. Following the May 8, 2024 incident, Plaintiff informed her co-worker, Mr. Marcus Jones, of what transpired.

60. Mr. Jones advised Plaintiff to report Defendant Lockhart's conduct to QSI.

61. After her shift on May 8, 2024, Plaintiff contacted her former Manager in Georgia, Mr. Glenn Jones, and asked who Plaintiff should contact within QSI to report sexual harassment.

62. At the direction of Mr. Glenn Jones, Plaintiff contacted Mr. Saul Garcia, Defendant Lockhart's manager.

63. Plaintiff explained Defendant Lockhart's conduct to Mr. Garcia.

64. When Plaintiff's next shift arrived after she made her report, Plaintiff appeared for work as expected.

65. At the start of Plaintiff's next shift, Defendant Lockhart called Plaintiff and asked her what was going on.

66. Mr. Garcia had instructed Defendant Lockhart to stay home from that shift.

67. Defendant Lockhart questioned Plaintiff regarding what she had told Mr. Garcia.

68. Defendant Lockhart questioned Plaintiff as to whether she was on site at the Facility.

69. Defendant Lockhart stated to Plaintiff that he would come to the Facility to speak with her, despite Mr. Garcia's instructions to stay home.

70. Defendant Lockhart thereafter came to the Facility in search of Plaintiff.

71. Plaintiff had a panic attack at the Facility upon learning that Defendant Lockhart was coming to confront her.

72. An Alatrade employee witnessed Plaintiff's panic attack.

73. The Alatrade employee directed Plaintiff to the on-site Security Guard.

74. The on-site Security Guard contacted the Phenix City Police Department for assistance.

75. Defendant Lockhart entered the Facility in search of Plaintiff.

76. When the police arrived at the Facility, Plaintiff reported the sexual assault committed by Defendant Lockhart.

77. When the police arrived at the Facility, Plaintiff reported Defendant Lockhart's search for her at the Facility.

78. Plaintiff informed the responding officers that she wished to press criminal charges against Defendant Lockhart.

79. An officer of the Phenix City Police Department prepared an Officer Report for Incident 24PL09760 documenting Plaintiff's report.

80. Following Plaintiff's report, Defendant QSI, LLC placed Plaintiff on paid leave.

81. Following Plaintiff's report, Defendant QSI, LLC permitted Defendant Lockhart to return to work in his supervisory position at the Facility.

82. On May 13, 2024, Plaintiff met with Ms. Alexandra Gonzalez, QSI's HR Area Manager for the Facility, to provide a statement regarding the May 8, 2024 incident.

83. During her meeting with Ms. Gonzalez, Plaintiff advised QSI that Defendant Lockhart was a registered sex offender.

84. During her meeting with Ms. Gonzalez, Plaintiff informed QSI that she planned to press criminal charges against Defendant Lockhart.

85. Plaintiff was told that her complaint would be investigated and was instructed to remain on administrative leave.

86. On or about May 16, 2024, Plaintiff spoke with Mr. Roberto Murillo, QSI's Human Resources Division Manager, regarding the investigation and her return to work.

87. During the May 16, 2024 call, Mr. Murillo advised Plaintiff that she had two options to return to work.

88. During the May 16, 2024 call, Mr. Murillo advised Plaintiff that her first option was to transfer back to the QSI location in Pine Mountain Valley, Georgia.

89. During the May 16, 2024 call, Mr. Murillo advised Plaintiff that her second option was to return to the Facility and continue to work under Defendant Lockhart's supervision.

90. During the May 16, 2024 call, Mr. Murillo stated to Plaintiff that he had told Defendant Lockhart that not everyone likes to be touched and that Defendant Lockhart now knew who he could and could not touch.

91. Plaintiff asked Mr. Murillo how returning to work under Defendant Lockhart's supervision would work given that Plaintiff was pressing criminal charges against Defendant Lockhart.

92. In response, Mr. Murillo stated to Plaintiff that she could not work at the Facility if she was pressing criminal charges against Defendant Lockhart.

93. Plaintiff informed Mr. Murillo that she had recently moved from Georgia to Alabama and could not transfer back to the Pine Mountain Valley location.

94. Plaintiff informed Mr. Murillo that she would continue to press criminal charges against Defendant Lockhart.

95. Plaintiff remained on paid leave following the May 16, 2024 call.

96. On or about May 19, 2024, Mr. Murillo again called Plaintiff regarding her return to work.

97. During the May 19, 2024 call, Mr. Murillo advised Plaintiff that QSI did not have any other location to which to transfer her.

98. During the May 19, 2024 call, Mr. Murillo communicated to Plaintiff that she was not permitted to return to the Facility.

99. During the May 19, 2024 call, Mr. Murillo communicated to Plaintiff that Defendant Lockhart was uncomfortable working with Plaintiff.

100. During the May 19, 2024 call, Mr. Murillo communicated to Plaintiff that Defendant Lockhart was not being moved from the Facility.

101. During the May 19, 2024 call, Mr. Murillo communicated to Plaintiff that Defendant Lockhart was not being disciplined.

102. During the May 19, 2024 call, Mr. Murillo communicated to Plaintiff that Defendant Lockhart was not being terminated.

103. During the May 19, 2024 call, Plaintiff asked to speak to Mr. Murillo's supervisor, Ms. Amy Lou Yancy.

104. During the May 19, 2024 call, Mr. Murillo declined Plaintiff's request to speak with Ms. Amy Lou Yancy.

105. During the May 19, 2024 call, Mr. Murillo stated to Plaintiff that the decision was final.

106. Following the May 19, 2024 call, Plaintiff reached out to Human Resources and management at QSI on numerous occasions.

107. QSI did not respond to Plaintiff's further communications.

108. On or about June 17, 2024, Plaintiff received notice of her termination from QSI.

109. Plaintiff's separation notice from QSI is dated June 17, 2024.

110. Plaintiff's separation notice from QSI lists the separation reason as "Terminate Employee > Voluntary > No Call/No Show."

111. Plaintiff's separation notice from QSI lists her termination date as May 9, 2024.

112. The stated reason for Plaintiff's termination is false.

113. Plaintiff was not absent on a no-call, no-show basis on May 9, 2024.

114. Plaintiff was on QSI-approved paid leave on May 9, 2024.

115. Plaintiff's pay records demonstrate that she was on paid leave following the May 8, 2024 incident.

116. QSI was aware that the stated reason for Plaintiff's termination was false.

117. QSI took no remedial action against Defendant Lockhart following Plaintiff's report.

118. Defendant Lockhart retained his supervisory position at the Facility following Plaintiff's report.

119. Following Plaintiff's termination, Defendant Lockhart has discussed Plaintiff's allegations of sexual harassment with other QSI employees.

120. Prior to her termination, Plaintiff received no disciplinary actions related to her job performance other than absence-related notations.

121. QSI did not cite job performance as the basis for Plaintiff's termination at the time of termination.

122. On October 1, 2024, Plaintiff timely filed Charge No. 420-2025-00001 with the U.S. Equal Employment Opportunity Commission, alleging sex discrimination, sexual harassment, and retaliation against QSI, LLC.

123. On March 27, 2026, the Equal Employment Opportunity Commission issued a Determination and Notice of Rights to Plaintiff. See Ex. 1.

124. Plaintiff filed this Complaint within ninety (90) days of receipt of the Determination and Notice of Rights.

## IV. CLAIMS FOR RELIEF

## COUNT I: TITLE VII SEXUAL HARASSMENT

## (Against Defendant QSI, LLC)

125. Plaintiff is a member of a protected class by virtue of her sex, female.

125. Plaintiff is a member of a protected class by virtue of her sex, female.

126. Plaintiff was subjected to unwelcome harassment based on her sex.

126. Plaintiff was subjected to unwelcome harassment based on her sex.

127. The unwelcome harassment included Defendant Lockhart's touching of Plaintiff's shoulders without permission in mid-April 2024.

127. The unwelcome harassment included Defendant Lockhart's touching of Plaintiff's shoulders without permission in mid-April 2024.

128. The unwelcome harassment included Defendant Lockhart's touching of Plaintiff's leg, his offer to give her a massage, his pressing of his body against hers from behind, and his placing his arm around her on May 8, 2024.

128. The unwelcome harassment included Defendant Lockhart's touching of Plaintiff's leg, his offer to give her a massage, his pressing of his body against hers from behind, and his placing his arm around her on May 8, 2024.

129. The harassment was based on Plaintiff's sex.

129. The harassment was based on Plaintiff's sex.

130. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

130. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

131.  The harassment culminated in a tangible employment action against Plaintiff in the form of her termination.

131.  The harassment culminated in a tangible employment action against Plaintiff in the form of her termination.

132.  Defendant Lockhart was Plaintiff's supervisor with immediate authority over her.

132.  Defendant Lockhart was Plaintiff's supervisor with immediate authority over her.

133.  Defendant QSI, LLC is vicariously liable for the harassment committed by Defendant Lockhart.

133.  Defendant QSI, LLC is vicariously liable for the harassment committed by Defendant Lockhart.

134.  Defendant QSI, LLC knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

134.  Defendant QSI, LLC knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

135.  As a direct and proximate result of Defendant QSI, LLC's conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

135.  As a direct and proximate result of Defendant QSI, LLC's conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

## COUNT II: TITLE VII DISCRIMINATION AND RETALIATION

### (Against Defendant QSI, LLC)

136. Plaintiff is a member of a protected class by virtue of her sex, female.

137. Plaintiff was qualified for the position of SSOP Clerk at the Facility.

138. Plaintiff engaged in protected activity under Title VII when she reported Defendant Lockhart's sexual harassment and assault to QSI on May 8, 2024.

139. Plaintiff engaged in further protected activity under Title VII when she provided a statement regarding Defendant Lockhart's conduct to Ms. Alexandra Gonzalez on May 13, 2024.

140. Plaintiff engaged in further protected activity under Title VII when she informed QSI of her intent to pursue criminal charges against Defendant Lockhart based on his sexual conduct toward her.

141. Defendant QSI, LLC was aware of Plaintiff's protected activity.

142. Plaintiff suffered an adverse employment action on May 16, 2024, when Mr. Murillo informed Plaintiff that she could not return to the Facility if she continued to press criminal charges against Defendant Lockhart.

143. Plaintiff suffered an adverse employment action when Defendant QSI, LLC informed her on May 19, 2024 that she was not permitted to return to her position at the Facility.

144. Plaintiff suffered an adverse employment action when Defendant QSI, LLC terminated her employment, as reflected in her separation notice dated June 17, 2024.

145. Defendant QSI, LLC retained Defendant Lockhart, a male, in his supervisory position at the Facility while terminating Plaintiff, a female who reported his sexual misconduct.

146. The circumstances of Plaintiff's termination give rise to a plausible inference of

discrimination based on sex, including that QSI elected to displace Plaintiff rather than the male harasser, and that QSI prioritized Defendant Lockhart's comfort over Plaintiff's right to a workplace free from sex-based harassment.

147. There is a causal connection between Plaintiff's protected activity and the adverse employment actions taken against her.

148. The temporal proximity between Plaintiff's May 8, 2024 report and Defendant QSI, LLC's May 16 and May 19, 2024 communications regarding her return to work supports the inference of retaliation.

149. Mr. Murillo's statement to Plaintiff on May 16, 2024 that she could not work at the Facility if she was pressing criminal charges against Defendant Lockhart constitutes direct evidence of retaliation.

150. Defendant QSI, LLC's stated reason for Plaintiff's termination, that Plaintiff was a "no-call, no-show" on May 9, 2024, is false and pretextual.

151. Plaintiff was on QSI-approved paid leave on May 9, 2024 and was therefore not a "no-call, no-show."

152. Defendant QSI, LLC's stated reason for Plaintiff's termination is further pretextual because Plaintiff received no documented discipline for performance issues prior to her termination, and her termination occurred only after she reported Defendant Lockhart's sexual misconduct.

153. As a direct and proximate result of Defendant QSI, LLC's discriminatory and retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

## COUNT III: NEGLIGENT HIRING AND RETENTION

### (Against Defendant QSI, LLC)

154. On May 8, 2024, Defendant Lockhart intentionally touched Plaintiff in a harmful or offensive manner, with sexual overtones and without her permission, by touching her leg, pressing his body against hers from behind, and placing his arm around her.

155. Defendant Lockhart's touchings of Plaintiff were intentional, conducted with sexual overtones, and unwelcome, and therefore constituted batteries under Alabama law.

156. Defendant QSI, LLC owed Plaintiff a duty of reasonable care in the hiring, supervision, and retention of its employees, including Defendant Lockhart.

157. Defendant QSI, LLC knew, or in the exercise of reasonable care should have known, that Defendant Lockhart was a registered sex offender.

158. Defendant QSI, LLC admitted in its EEOC Position Statement that Defendant Lockhart is a registered sex offender.

159. Defendant Lockhart's status as a registered sex offender placed Defendant QSI, LLC on notice of his propensity for sexual misconduct.

160. Despite knowledge of Defendant Lockhart's status as a registered sex offender, Defendant QSI, LLC retained Defendant Lockhart in a supervisory position.

161. Despite knowledge of Defendant Lockhart's status as a registered sex offender, Defendant QSI, LLC placed Defendant Lockhart in direct supervisory authority over Plaintiff, a female subordinate.

162. Despite knowledge of Defendant Lockhart's status as a registered sex offender, Defendant QSI, LLC permitted Defendant Lockhart to work alone with Plaintiff during the overnight shift.

163. Following Plaintiff's report of Defendant Lockhart's sexual misconduct on May 8, 2024, Defendant QSI, LLC acquired actual knowledge of Defendant Lockhart's tortious conduct directed at Plaintiff.

164. Following Plaintiff's report, Defendant QSI, LLC knew or should have known that Defendant Lockhart's conduct constituted sexual harassment and a continuing tort.

165. Defendant QSI, LLC failed to take adequate steps to remedy the situation following Plaintiff's report.

166. Defendant QSI, LLC retained Defendant Lockhart in his supervisory position following Plaintiff's report.

167. Defendant QSI, LLC took no disciplinary action against Defendant Lockhart following Plaintiff's report.

168. Rather than removing or disciplining Defendant Lockhart, Defendant QSI, LLC instead displaced Plaintiff.

169. Defendant QSI, LLC's failure to exercise reasonable care in the hiring, supervision, and retention of Defendant Lockhart was a proximate cause of the injuries Plaintiff suffered.

170. As a direct and proximate result of Defendant QSI, LLC's negligent hiring and retention, Plaintiff has suffered and continues to suffer damages, including but not limited to physical injury, emotional distress, mental anguish, humiliation, lost wages, and lost benefits.

## COUNT IV: WANTON HIRING, RETENTION, AND SUPERVISION

### (Against Defendant QSI, LLC)

171. Defendant QSI, LLC consciously and recklessly disregarded a known risk to Plaintiff's safety by retaining Defendant Lockhart in a supervisory position despite his status as a registered sex offender.

172. Defendant QSI, LLC consciously and recklessly disregarded a known risk to Plaintiff's safety by permitting Defendant Lockhart to work alone with Plaintiff during the overnight shift despite his status as a registered sex offender.

173. Following Plaintiff's May 8, 2024 report of sexual misconduct, Defendant QSI, LLC consciously chose to retain Defendant Lockhart in his supervisory position.

174. Following Plaintiff's May 8, 2024 report, Defendant QSI, LLC consciously chose not to discipline Defendant Lockhart.

175. Following Plaintiff's May 8, 2024 report, Defendant QSI, LLC consciously chose to terminate Plaintiff rather than Defendant Lockhart.

176. Defendant QSI, LLC, through its agent Mr. Roberto Murillo, communicated to Plaintiff that Defendant Lockhart's discomfort working with Plaintiff was the basis for QSI's decision to displace Plaintiff rather than Defendant Lockhart.

177. Defendant QSI, LLC, through its agent Mr. Roberto Murillo, suggested that QSI "sweep this under the rug" rather than meaningfully address Defendant Lockhart's conduct.

178. Defendant QSI, LLC made a conscious decision to prioritize the retention of Defendant Lockhart over the safety of Plaintiff and other female employees.

179. Defendant QSI, LLC's conduct demonstrates a conscious disregard for the rights and safety of Plaintiff.

180. Defendant QSI, LLC's conduct constituted wanton hiring, retention, and supervision under Alabama law.

181. As a direct and proximate result of Defendant QSI, LLC's wanton conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to physical injury, emotional distress, mental anguish, humiliation, lost wages, and lost benefits.

182.    Defendant QSI, LLC's wanton conduct entitles Plaintiff to an award of punitive damages.

## COUNT V: ASSAULT AND BATTERY

### (Against Defendant Jerome Lockhart)

183.    On May 8, 2024, Defendant Lockhart intentionally touched Plaintiff's leg without her permission.

184.    On May 8, 2024, Defendant Lockhart intentionally pressed his body against Plaintiff's body from behind without her permission.

185.    On May 8, 2024, Defendant Lockhart intentionally placed his arm around Plaintiff without her permission.

186.    Each of Defendant Lockhart's touchings of Plaintiff on May 8, 2024 was conducted in a harmful or offensive manner.

187.    Each of Defendant Lockhart's touchings of Plaintiff on May 8, 2024 was conducted with sexual overtones.

188.    Each of Defendant Lockhart's touchings of Plaintiff on May 8, 2024 was unwelcome, as evidenced by Plaintiff's contemporaneous and unambiguous verbal protests.

189.    Defendant Lockhart's conduct on May 8, 2024 placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact.

190.    Defendant Lockhart's conduct on May 8, 2024 constituted assault and battery under Alabama law.

191.    As a direct and proximate result of Defendant Lockhart's assault and battery, Plaintiff has suffered and continues to suffer damages, including but not limited to physical injury, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

192.    Defendant Lockhart's conduct was intentional, willful, and committed with malice or with

reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a.   Trial by jury;

b.   A finding that Defendants violated Plaintiff's rights as set forth herein;

c.   Reinstatement to Plaintiff's position at the Facility, or in the alternative, front pay;

d.   Full back pay plus interest;

e.   Compensatory damages, including damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life, in an amount to be determined at trial;

f.   Punitive damages on Counts IV and V, and on Counts I and II to the extent permitted by Title VII, in an amount to be determined at trial;

g.   Reasonable attorney fees and costs in accordance with Title VII and applicable law; and

h.   Any other relief this Court deems proper and just.

Respectfully submitted this 8th day of May, 2026.

s/William J. Sinor
William J. Sinor
Alabama Bar No. ASB-6414-J10J
Kirby G. Smith
Georgia Bar No. 250119
Attorneys for Plaintiff
*Pro Hac Vice Application Pending*

Michel Allen & Sinor
1900 International Park Drive
Suite 140
Birmingham, Alabama 35243
Office: 205.980.5700
Fax: 205.994.2819
William@mas-firm.com

The Kirby G. Smith Law Firm, LLC
2872 Woodcock Blvd.
Suite 225
Atlanta, GA 30341
T: (844) 454-7529
F: (877) 352-6253
kgs@kirbygsmith.com

**JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 8th day of May, 2026.

<u>s/William J. Sinor</u>

William J. Sinor
Alabama Bar No. ASB-6414-J10J
Kirby G. Smith
Georgia Bar No. 250119
Attorneys for Plaintiff
*Pro Hac Vice Application Pending*

Michel Allen & Sinor
1900 International Park Drive
Suite 140
Birmingham, Alabama 35243
Office: 205.980.5700
Fax: 205.994.2819
William@mas-firm.com

The Kirby G. Smith Law Firm, LLC
2872 Woodcock Blvd.
Suite 225
Atlanta, GA 30341
T: (844) 454-7529
F: (877) 352-6253
kgs@kirbygsmith.com